LEANDER HOPKINS, Overseer of the Poor, Petitioner, *vs.* ABBIE J. HOWARD, Appellant.

PROVIDENCE—FEBRUARY 21, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

A verdict that a respondent " is lacking in discretion in managing her estate " is not sufficient ground for the appointment of a guardian of such respondent and her estate, under Gen. Laws R. I. cap. 196, § 7.

A verdict is also fatally defective which finds that a respondent " was not of sound mind " at the time of filing a petition for the appointment of a guardian of her estate, when such verdict is not responsive to any issue raised and is without evidence to support it.

In an application for the appointment of a guardian of the estate of a person of full age, evidence offered to show that ten years prior to the filing of the petition the respondent spent quite a portion of a legacy of considerable amount is too remote.

It rests largely in the discretion of the trial court to determine how far back the petitioner's evidence may go in such cases.

PETITION for the appointment of a guardian of the person and estate of a person of full age. Heard on respondent's petition for a new trial after a verdict against her in her appeal from the Probate Court.

TILLINGHAST, J. The verdict in this case is fatally defective. The jury found, in the first place, that the respondent at the time of the filing of the petition in the Probate Court "was not of sound mind," which finding was not responsive to any issue raised and was wholly without evidence to support it. They found, in the second place, that the respondent "was lacking in discretion in managing her estate," which finding is only responsive in part to the issue raised. The allegation in the petition is that the defendant "from want of discretion in managing her estate is likely to bring herself and family to want, and to render herself and family chargeable upon the town of Scituate." Of course the mere fact, as found by the jury, that she was lacking in discretion in the management of her estate is not enough to warrant the appointment of a guardian at the instance of the overseer of the poor of the town. It must also appear that, by reason of such want of discretion, she is likely to become a public charge thereon, as alleged in the petition. Gen. Laws R. I. cap. 196, § 7.[1] Indeed, this allegation is practically the only thing that gives the petitioner any standing in court.

As the case must go back for a new trial, we will suggest that we think the evidence as reported falls far short of making out a case for the appointment of a guardian in any event. It shows that the respondent is possessed in her own right of unencumbered real estate of the value of $1,000 or more; that there is some money belonging to her in the hands of her trustee, appointed by this court, Henry J. Du-

---

[1] SEC. 7. Whenever any idiot or lunatic or person of unsound mind, or any person who from excessive drinking, gaming, idleness or debauchery of any kind, or from want of discretion in managing his estate, shall be likely to bring himself or family to want, or to render himself or family chargeable, shall reside or have a legal settlement in any town, the Court of Probate of such town shall have the right to appoint a guardian of the person and estate of such person, and of the estate, within this State, of such person resident without this State.

bois, Esq., and that her property has not materially depreciated in amount during the last five years or more, although she has not only supported herself out of it but also her husband, who has been sick and disabled during a large part of this time. It also appears by the evidence and by the admission of the petitioner that respondent is about to receive a legacy of a considerable sum from a deceased relative.

The proof as to respondent's indiscretion in the managing of her estate consists, mainly, of the most ordinary and, in many cases, the most trivial expenditures, such, for example, as spending all the money she had at a given time—in many instances not more than fifty cents or a dollar—for sugar, tea, butter, or some other article of every day use in a family; that she occasionally expressed a desire to buy calicoes, fancy boxes and candies, especially at Christmas time, and sometimes asked to have articles of small value put aside for her until she could pay for them; that she occasionally bought a glass of soda or a few cents worth of candy; and that at one time she bought a wagon by bargain for her use, for which she agreed to pay $65—a fair price according to the evidence —but being unable to pay more than $30 she finally lost the wagon, it having been purchased on a "loan agreement," socalled. It further appears that she occasionally bought eight or ten pounds of beef at a time for her family, which consisted of her husband, herself, and a boarder, spending all the money she had with her in that way; and that she sometimes bought shoes and other articles of ordinary necessity and had them put aside for her until she could pay for them. Many similar transactions of various kinds are detailed at great length in the evidence, which simply go to show that the respondent was poor and had the use of very little money. And while it appears that she is somewhat eccentric in some of her transactions, yet there is nothing to show that she is wasteful or extravagant, and no such evidence that she is likely to become a public charge from want of discretion in managing her estate as to warrant the court in placing her under guardianship.

As to the evidence offered by the petitioner for the purpose

of showing that the respondent ten years ago or more improvidently spent quite a portion of a legacy of about $4,000 which she received, we think the court properly ruled at first that it was too remote, quoting from Smith's Probate Law, 5 ed. 121, in support of said ruling, as follows: " Acts of the person complained of "—that is, the person over whom it is sought to appoint a guardian—" at or near the time of making the complaint may be proved for the purpose of showing the state of his mind and his manner of life, but not his acts at a remote period." It seems, however, that this ruling was subsequently modified in so far as to permit the petitioner, against respondent's objection, to show how much money she received from said legacy and also that she drew the larger part of it out of the bank within a few months thereafter. What disposition she made of the money, however, except that she spent about a thousand dollars thereof in the purchase of a house and deposited $700 thereof with Mr. Dubois, her trustee, does not appear, the court ruling that, while the petitioner could show that she received the money, he could not show what disposition she made of it, except in so far as the statements of her trustee showed that fact. The respondent duly excepted to the ruling.

This evidence was permitted to be used in argument by petitioner's counsel, against the objection of respondent, for the purpose of showing that she was incompetent to manage her estate, and it was also commented upon by the presiding justice, in his charge to the jury, as competent evidence for them to consider in determining whether a guardian should be appointed. The respondent duly excepted to the argument of counsel in this regard, claiming that the jury had no right to consider that part of the evidence. We think the exceptions were well taken. For while it rests largely in the discretion of the trial court to determine how far back the petitioner may go in cases of this sort, and while in this case we cannot say that the court might not properly have allowed the petitioner to go farther back than two years, which was the limit fixed by it at first, yet we think that evidence of the respondent's financial condition ten years ago and more was

too remote to have any bearing on the case. But, even conceding that it was admissible, yet there is nothing to show that respondent wasted or dissipated the money received at that time, as it was argued by petitioner's counsel that there was, and as suggested by the court in its charge to the jury. For aught that appears she may have lost it, as very many others have lost their money, by misfortune or bad investments. At any rate the jury were not warranted, from anything that appears in the evidence, in finding that the respondent wasted or even improvidently used the money which she received from said legacy. Moreover, if evidence was admissible as to the receipt of said legacy, the manner in which it was used by the respondent was, of course, admissible, also, for otherwise the jury might draw an unwarranted inference therefrom.

Petition for new trial granted.

*Franklin P. Owen*, for petitioner.

*Edward C. Dubois and Henry J. Dubois*, for respondent.

